**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**COLUMBIA DIVISION**

| | |
|---|---|
| **WAYNE BURGESS,** ] | |
| ] | |
| **Plaintiff,** ] | |
| **vs.** ] | |
| ] | **Case No. _____** |
| **CITY OF PULASKI/CITY OF PULASKI** ] | |
| **POLICE DEPARTMENT, OFFICER JOEL** ] | **Jury Trial Demanded (12)** |
| **ROBISON, OFFICER JOHN DICKEY, and** ] | |
| **GILES COUNTY, TENNESSEE,** ] | |
| ] | |
| **Defendants.** ] | |

---

### COMPLAINT FOR DAMAGES

---

Comes Now the Plaintiff, Wayne J. Burgess, and files this complaint for damages against the above-named Defendants, and for his cause of action against these Defendants states as follows:

### NATURE OF THE CASE

1.      Plaintiff Wayne Burgess was wrongfully convicted of the murder of young Nakeavia Rivers by a Pulaski, Tennessee jury in 1999.  This was a crime he did not commit and had absolutely nothing to do with.

2.      As a result of this wrongful conviction Wayne spent an unimaginable 24 years in prison, unjustly plucked from society in the prime of his life.

3.      In vacating Mr. Burgess' conviction, The Giles County Circuit Court did not simply vacate his conviction.  In its Order signed on April 13, 2023, the Court stated: *"...the new scientific evidence **proves** Mr. Burgess is innocent."*

4.      The Giles County Circuit Court further stated in its order: *"This Court holds that*

*Petitioner's conviction **violates due process under both the Tennessee and federal constitutions**. Accordingly, in the alternative, the Court must vacate the conviction on this basis*."

5.      Wayne's wrongful imprisonment was the direct result of egregious misconduct by the Defendant Officers of the Pulaski Police Department ("PPD") and/or the city of Pulaski.

5.      The Defendant Officers Dickey and Robison coerced a "confession" from Wayne through the use of illegal tactics, lies, physical threats, and actual physical coercion in violation of Wayne's civil rights under the United States Constitution.

6.      The "statement" illegally coerced from Mr. Burgess was not consistent with the physical evidence in the case.  Indeed, when he first voluntarily spoke to the police, he told the truth and maintained his innocence.

7.      Defendant Officer Robison blatantly lied about the coercive tactics used when testifying at the general sessions hearing in this matter.

8.      In addition to employing coercive and abusive tactics to elicit a "confession," Defendants sought out and relied on the "expert" testimony of disgraced medical examiner Dr. Charles Harlan to shore up the false confession illegally elicited from Wayne.

9.      At the time of the events in this case, Dr. Harlan had been suspended from his position as Davidson County Assistant Medical Examiner without pay since 1994.  On June 30, 1995, his contract as State Medical Examiner was terminated.

10.     Both of these events occurred prior to officials in Giles County contracting with him as the county medical examiner in addition to a rather substantial investigation into Dr. Harlan's misconduct by the Tennessee Bureau of Investigation.

11.     In 1995, four years prior to Wayne's "murder" case being brought, then Tennessee's Chief Medical Examiner Dr. George Nichols, opined to the Tennessee Bureau of Investigation with

regard to Dr. Harlan's work, "*If this line of irrational thinking has been applied to other cases in the state of Tennessee, then God help you and the rest of the citizens of Tennessee*".

12.     Dr. Harlan subsequently had his medical license stripped from him in 2005.

13.     Dr. Harlan's theory, not consistent with either medical professional (s) that treated Nakeavia in 1999, nor consistent with numerous other medical experts has been shown to be scientifically impossible.

14.     The Defendants further failed to conduct a proper and thorough investigation of the death of Nakeavia.  In addition to the liver laceration that was ultimately responsible for the young girl's death, there was ample evidence that Nakeavia was the victim of a pattern of physical abuse.

15.     The likely perpetrators of this abuse were not questioned or investigated appropriately. Instead the Defendants ruthlessly targeted an innocent man and made a mockery of our justice system while destroying a good man's life.

16.     There was never any allegation that Mr. Burgess had anything to do with any of the other/prior injuries, including rib fractures and scars on the child's chest.  He did not live with her and had very limited access to her.

17.     The Defendants turned a blind eye to the obvious and pushed forward with a malicious prosecution and investigation of Wayne, one that stole almost a quarter century of an innocent man's life.

18.     Mr. Burgess' conviction was not the work of rogue, low-level officers within the PPD. Rather this was a high-profile case conducted by experienced officers.

19.     Officer Robison was a long-time detective at the department and rose to the level of Lieutenant before leaving to pursue another career.

20.     Officer John Dickey is now Chief John Dickey of the Pulaski Police Department.  The city

rewarded these men. The city promoted and ratified the actions of these men.

21.     Wayne's horrific wrongful imprisonment was the result of an investigation and police misconduct so negligent, grossly negligent, reckless, and/or deliberately indifferent to Wayne's freedom and liberty interests that it amounts to an egregious constitutional deprivation of Wayne's civil rights and the theft of twenty-four (24) years of his life.

22.     As a direct and proximate result of the Defendants' actions and/or omissions Mr. Burgess has suffered horrific injuries and damages. He lost a lifetime of experiences with his son and other family. He lost 24 plus years of his adult life, some of the most productive years of his life. He lost his freedom, has experienced intense pain and suffering, emotional and/or mental trauma, indignities, degradation, permanent damage to his natural emotional and mental development, and restrictions on all types of his personal freedoms including but not limited to the following; travel, family relations, athletic opportunity, educational and vocational opportunity, sexual activity, and freedom of speech and expression.

23.     The Defendant Officers, the City of Pulaski/Pulaski Police Department and Giles County, are legally responsible under 42 U.S.C. § 1983 as these injuries complained of herein are the foreseeable result of the Defendants' negligence, recklessness, gross negligence/misconduct, policies and procedures, failure to train and or properly supervise their officers and/or employees and/or deliberate indifference to Mr. Burgess' civil rights.

24.     Wayne brings this action to hold these Defendants who have illegally caused his wrongful conviction and imprisonment for approximately 24 years accountable under the law.

## **PARTIES**

25.     Plaintiff Wayne Burgess is a 59-year-old African American male and resident of the state of Tennessee that has been wrongfully prosecuted, convicted, and imprisoned due to the actions

and/or omissions of the Defendants.

26.     Defendant Officer John Dickey is an adult resident of the State of Tennessee.  At all times material hereto, Defendant Dickey was an officer with the Pulaski Police Department (PPD) and was acting by virtue of his position as an officer with the PPD and under the color of state law. He is sued in his individual capacity and as an agent of the Pulaski Police Department.  Officer Dickey is now the Chief of Police for the PPD.

27.     Defendant Officer Joel Robison is an adult resident of the State of Tennessee.  At all times material hereto, Defendant Robison was an officer with the Pulaski Police Department and was active by virtue of his position as an officer with the PPD and under the color of state law.  He is sued in his individual capacity and as an agent of the Pulaski Police Department.

28.     Defendant City of Pulaski is a local government entity, municipality, and/or political subdivision of the State of Tennessee and among its other functions maintains and operates a law enforcement agency known as the Pulaski Police Department.  At all times relevant to this action the Pulaski Police Department was and is under the responsibility of the City of Pulaski.

29.     Defendant

## JURISDICTION AND VENUE

30.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation of Plaintiff's civil rights under color of law as secured by the United States Constitution.

31.     Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1332, 1343, 1342(a)(3)(4) and § 1367(a).

32.     This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

33.     This Court has jurisdiction over Plaintiff's claim of violation of civil rights pursuant to 42 U.S.C. §1983 and 42 U.S.C. § 1985 and pendant jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

34.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the factual acts and/or omissions giving rise to this litigation occurred within this district and within the applicable statute of limitations and this Court otherwise has jurisdiction.

## FACTUAL ALLEGATIONS

### *Wayne Burgess Background*

35.     Wayne was born in Pennsylvania, but he was raised in Pulaski, Tennessee, and is a true Tennessee native.

36.     He was an active member of the First Baptist Church Bodenham.  He attended middle school at Bodenham Jr. high and graduated from Giles County High School in 1981.

37.     While Wayne succeeded in athletics and physical conditioning classes, he did at times struggle with his studies, and it did take Wayne 5 years to finally graduate from high school.

38.     Wayne did take some college level courses on and off from 1989 to 1996, earning approximately 17 credit hours, and exhibiting similar struggles with his studies in college as he did in high school.

39.     After high school Wayne maintained steady employment.  He was Youth Director at Greater Richland Creek Missionary Baptist Association, a counselor and mentor at American Baptist College, worked as a line worker and packer at Frito Lays Company in Pulaski, Tennessee, as a line worker and assembler at Gabriel Company, and leading up to his wrongful conviction and malicious prosecution by these Defendants Wayne worked as a parts builder and assembler at Torrington/Rafner Bearing Company.

40.     Throughout this time Wayne remained an active member at his Church and engaged in regular volunteer work in his community.  At the time of unlawful arrest at the hands of the Defendants, Wayne had no criminal record.

41. Wayne had and has a son, for which he consistently paid his child support obligations. Wayne love his son and frankly was crazy about him and being a father.

42. Since the time of Wayne's unlawful conviction at the hands of the Defendants, he has always served his time in jail as a productive and model inmate. He served on the Inmate Observation Program and monitored other inmates for signs of depression, suicide, and anxiety.

43. Further, during Wayne's time in jail he was selected to serve on the Hardeman County Correctional Facility Grievance Board and to assist the prison staff with regard to addressing grievances by other inmates.

44. Wayne was a law abiding and upstanding member of this state and his community prior to being wrongfully convicted and falsely imprisoned for 24 years. Even after his treatment at the hands of the Defendants and the abject failure of these Defendants to conduct themselves lawfully which resulted in his incarceration, Wayne continued to lead a productive life and contribute to the prison the community the best he could.

### The Death of Nakeavia

45. Nakeavia, the young/infant child of Nacia Rivers passed away on or about August 8, 1997. Wayne had met Nacia Rivers approximately a year and a half before this tragic event.

46. Wayne and Nacia were initially friends, and said friendship grew into a dating relationship over the course of an approximately 4-month period.

47. Wayne was not Nakeavia's biological father, but the record is replete with references to the way Wayne treated Nakeavia. By all accounts Wayne treated Nakeavia with nothing but love and kindness and affection. He was good to her.

48. On or about August 8, 1997, Nakeavia was rushed to the local hospital after showing signs of illness and malaise. Tragically, the young child ultimately died as the result of an

injury/laceration to her liver and slow internal bleed.

49.    That fateful day Nacia and Nakeavia picked Wayne up at his home around 4:30 p.m.  They drove to Lawrenceburg and ate at Sonic.  On the way back to Nacia's home they stopped at Jones Home Furnishing.

50.    Nothing unusual or out of place happened the entire afternoon.  Nakeavia fell asleep in the car on the way home, and Wayne carried the young girl into the apartment and sat next to her on the couch.

51.    The record indicates quite clearly the three arrived back to Nacia's home at 7 p.m.  Defendant Dickey noted this in his reports, and testimony from trial further bolsters this arrival time.

52.    Wayne, Nacia, and Nakeavia were only at Nacia's residence a very short time.  After arriving back her home, Nacia went upstairs to use the restroom, when she had returned downstairs Nakeavia was showing signs of malaise and struggling to sit or stand.  According to the Emergency Room Note from Columbia Hillside Hospital, only a short distance away, Nakeavia was there by 7:05 p.m.

53.    Nakeavia's condition became critical, and she was flown to Huntsville for urgent medical care where she tragically passed away.

54.    The medical and/or scientific evidence definitively proves it was not possible that Wayne killed Nakeavia.  The Doctor that treated Nakeavia at Hillside, Dr. Teodorovic, opined that Nakeavia's injuries were not consistent with a recent traumatic blow.  Additional expert authorities have additionally proven definitely that Nakeavia's fatal injury (s) was sustained many hours to days prior to her presentation at Hillside.

55.    The timing described above is significant.  Nakeavia had no fresh marks or signs of injury

on her body, and Wayne had not seen either Nakeavia or Nacia in the preceding week leading up to August 8, 1997. Nacia Rivers testified that Wayne had not been to her home in the entire month proceeding the August 8th date. It is not possible that Wayne caused the injuries that led to Nakeavia's demise.

### Defendants Ignore the Evidence and Target Wayne Maliciously

56. Who cause the laceration to the young child's liver? This child was a victim of sustained abuse and the Defendants, rather pursue the actual perpetrator (s), maliciously pursued Wayne.

57. In addition to the liver laceration, Nakeavia had multiple since healed scars on her body. Including seven linear scars across her chest and circular scar appearing as a though she was burned with a cigarette. These were injuries that occurred weeks and months before her death. Further, imaging at Hillside revealed month old, healed rib fracture (s).

58. Wayne was never alleged to, nor did he have anything to do with these injuries. In reality Wayne had limited access to the young child and by all accounts treated her with nothing but kindness.

59. Nacia, the young girl's mother, did however change her story multiple times when questioned regarding these injuries. Further, it was implicated that she had inquired about these injuries to a local daycare owner, Vickie Grigsby, about said injuries. The Department of Human Services had also conducted a prior investigation into the welfare and living conditions of Nakeavia with Nacia and sent a caseworker to Nacia's home.

60. The Defendants further failed to conduct a meaningful investigation with regard to individuals that were or may have been with Nakeavia in the days and weeks prior to her passing. There is no evidence that Nakeavia's biological father was interviewed by the police. The record does not appear to show that that Defendants investigated any of the individuals that watched or

were with Nakeavia in the preceding 24 hours to her death.

61.     Defendants were aware of at least two, maybe three different individuals that were with the young child in the day or two prior to her demise.  One being Nacia's roommate who stayed with Nacia the night before the tragic death, who it seems the Defendants failed to even interview.

62.     In reality the Defendants had "found their man", and they would act outside the bounds of the law and procedure, and blatantly violate his constitutional rights to make sure they got him.

### Illegal and Coerced "Confession" of Wayne Burgess

63.     In Wayne's first interview with the Defendants he truthfully maintained his innocence. There is no recording or formal documentation from the first interview, and the Defendants do not dispute in the record that Wayne maintained his innocence in the first interview.

64.     The illegal and coerced "confession" stems from Wayne's second interview with Defendant Officer John Dickey and Defendant Officer Joel Robison.  There is no video or audio recording (s) from the second interview that occurred on August 13, 1997.  In this interview Wayne was not represented by counsel, however he did at one point ask for counsel by name, and the Defendants indicated Wayne could not afford counsel and denied him counsel.

65.     In this second interview Wayne was interrogated, through the use of coercive, manipulative, and threatening tactics for approximately 2 hours.

66.     The substance of this entire 2-hour interview conducted by Defendants Dickey and Robison is supposedly reflected in a document that is a little over one page in length.

67.     This document, signed by Wayne while under threat of physical violence and while being interrogated using objectively illegal techniques and tactics, contains assertion that are objectively false.  These assertions include but are not limited to some of the statements contained within the following paragraph: 1. "*She picked me up at the house about 4:00 p.m. and we went to*

*Lawrenceburg. We ate at Sonic. We left Sonic and went to Jones furniture store. Left there came to Pulaski, then when we got into Pulaski we went to her house at 210 Washington Circle. We came into the house, and she left to get some gas, I was left with the baby for about five minutes. Kevia was crying and agitated, and I hit her in the stomach. That is what happened."*

68.    Critical portions of the above statement are objectively false. Nacia never left to get gas. That is not consistent with Nacia's own testimony and the Defendants' investigation. The baby was never crying, this was stated on multiple occasions by Nacia. In fact, Nacia left the house only briefly to retrieve a baby bag from a vehicle parked about 8 feet from the front door. When Nacia returned from the car, only a few moments later, the child was asleep on the couch beside of Wayne. It was only after Nacia had gone upstairs briefly after coming back inside, that they noticed something wrong with Nakeavia. These are not the only inconsistences in the typed "confession".

69.    The fact is the alleged "confession" is and was totally inconsistent with the facts of the case and the facts presented at trial. How did Defendants coerce Wayne into signing this patently bogus statement drafted by Defendant Robison? They did so through illegal, coercive, manipulative, and threatening measure in clear violation of Wayne's civil rights.

70.    Defendants indicated to Wayne that what they were doing, having him sign the bogus statement drafted by Defendant Robison, was standard procedure. Apparently, this standard procedure and operating policy includes physical violence and physical threats.

71.    At one point Wayne attempted to get up and leave, and he was grabbed ahold of forcefully and put back down in his chair. Wayne's claim of being forcefully held there against his will is backed up by Defendant Robison's own testimony, as he stated that Defendant Dickey pushed Wayne back down into his seat, and that if Defendant Dickey would not have done it, that he would

have. Additionally, Defendants admitted that during the second interview Defendant Dickey threatened to **"put his shoe up his ass"** with regard to Wayne, while pointing at his shoe. Defendant Dickey claims that Wayne admitted his guilt after this clear threat of physical harm and violence toward Wayne.

72.    Extremely problematic was the Defendant Officers' conduct in the courtroom going forward. Their testimony reeks of malicious prosecution. At the initial preliminary hearing in this matter Defendant Robison denied that any threat was made. He later admitted to his lie admitted the threat of physical violence was made.

73.    At trial Defendant Robison testified, *"Investigator Dickey had spoke to him and told him that he was—it would be in his best interest to tell the truth, and come about it in what was said. He told him he would help as far as he could in the legal system, if he came around and told the truth. But if he didn't, he would put his shoe up his ass."*

74.    Defendant Robison, racking up additional inconsistent testimony, further alleged he had not been present when Defendant Dickey made the threat of physical violence, and that he had only heard about it later. Defendant Dickey clearly stated that this assertion from Defendant Robison was not accurate, and that Defendant Robison actually was present when he threatened Wayne.

75.    Finally, as noted above, when Wayne asked for counsel, the Defendants said that no defense attorney would be able to help him. Denying him counsel.

76.    This entire "confession" reeks of unlawful and coercive tactics. Wayne was not allowed to leave and forcefully kept in his seat when Defendant Dickey laid hands on him. Wayne was threatened with physical violence. Wayne was denied counsel. Wayne was manipulated and lied to by these Defendants. Wayne's civil rights were trampled by these Defendants.

### *Defendants Shore up their False, Fabricated, and Coerced Confession*

77.    These Defendants sought out and chose Dr. Charles Harlan to perform the autopsy of Nakeavia Rivers.

78.    T.C.A. § 38-7-104 (a) states: "A county medical examiner shall be appointed by the county mayor, subject to confirmation by the county legislative body, based on a recommendation from a convention of physicians resident in the county."  Simply put, the governing body of Giles County was responsible by statute for the selection of the county medical examiner.

79.    Defendant Giles County, and by accession, all other Defendants, negligently utilized Dr. Harlan despite numerous highly public issues with his performance and behavior:

     a.    In 1994, 5 years prior the trial of Wayne Burgess, Harlan was suspended without pay as a Davidson County Assistant Medical examiner for not following office policy pertaining to the use of a Metro facility and for falsifying a death certificate. He was banned from the Metro Nashville Crime Laboratory in February, 1994.

     b.    On June 30, 1995, Harlan's contract as State Medical Examiner was terminated.

     c.    On July 3, 1995, he was banned from entering the Tennessee Bureau of Investigations Crime Laboratory.

     d.    The issues raised regarding Harlan's conduct which ultimately led to the loss of his medical license included: Lack of personal protective equipment for removing bodies, bodies released without identification tags as to the names or infections nature, autopsied bodies not placed in leakproof bags, unsanitary conditions, dead mice on the floor, dead deer stored with dead human remains, allowing his assistant who was not a doctor to perform autopsies, sexually inappropriate conduct, falsifying a death certificate, and allowing his dog (s) to eat human organs as they

sat on floor scales.

e. Harlan botched numerous autopsies and ultimately lost his medical license for good in 2005.

80. Despite all of these very public issues with Harlan, he was the scum Defendants used to shore up Mr. Burgess' coerced confession and continue to maliciously prosecute him.

81. Harlan incorrectly determined the injury to Nakeavia occurred immediately prior to presentation at Hillside Hospital. This assertion was disputed by the treating doctor at Hillside Hospital and permanently dispelled by numerous medical professionals as not possible.

## CAUSES OF ACTION

## COUNT 1

**42 U.S.C. § 1983 Claim for Deprivation of Liberty Without Due Process of Law and Violation of Right to a Fair Trial, Under the 14th Amendment, Based on the Fabrication of False Evidence, Including False Confession (s)**

*Against Defendants Dickey and Robison*

82. Plaintiff hereby incorporates all of the allegations of this Complaint as if fully set forth herein, and further alleges as follows:

83. Defendants Dickey and Robison fabricated false evidence of Wayne's guilt, and as such have violated Wayne's right to a fair trial and have caused him to be deprived of his liberty and freedom without due process of law.

84. As laid out above and below, Defendants drew up and fabricated a false and baseless confession. They then proceeded to employ manipulative techniques, threats, physical coercion, false promises, and abusive tactics to force Wayne to sign the fabricated and false confession typed up by Defendant Robison.

85. Defendants fabricated this evidence prior to trial and did so knowingly and/or with a

reckless disregard for the truth. That fabricated evidence was then used as mechanism to arrest Wayne and maliciously prosecute him for a crime he did not commit.

86.     This fabricated evidence was used as a basis for the guilty verdict rendered by a Pulaski jury.

87.     Defendants individually and in concert used investigative and/or interrogation techniques that were so coercive and abusive they knew or should have known that said techniques would yield a false confession and/or false information. This includes threatening to put a foot up Wayne's ass, pushing/shoving him back into a chair, and manipulating Wayne.

88.     Defendants, individually and in concert, continued their investigation despite the fact that they knew or should have known based on the available evidence that they were maliciously prosecuting/prosecuting an innocent man.

89.     Defendants while acting under color of state law, ignored evidence that could have led them to the true target/perpetrator responsible for the death of Nakeavia Rivers. By failing to follow up on such evidence the Defendants conducted a constitutionally inadequate investigation in violation of Wayne's right to a fair trial.

90.     Had Defendants not engaged in such conduct, individually and cumulatively, the evidence would have tended to prove Wayne's innocence and cast doubt on the entire investigation and prosecution, and most likely would have led to a different outcome at trial.

91.     The foregoing acts and/or omissions were deliberate, reckless, wanton, cruel, motivated by mal intent or motive, conducted in bad faith, and/or involved a callous disregard for Wayne's rights. These acts were perpetrated under the color of state law and in their capacities as employees, officers, and or agents of the City of Pulaski and/or the PPD.

92.     As a direct and proximate result of the Defendants' actions Wayne was detained, charged

with the murder of Nakeavia Rivers, prosecuted, falsely arrested, falsely imprisoned, wrongfully convicted, and spent 24 years in prison for a crime he did not commit.

## COUNT 2

### 42 U.S.C. § 1983 Claim for Malicious Prosecution and Violation of the 4th and 14th Amendments to the United States Constitutions

#### *Against Defendants Dickey and Robison*

93.     Plaintiff hereby incorporates all of the allegations of this Complaint as if fully set forth herein, and further alleges as follows:

94.     As described in greater detail above and below, the Defendant Officers Dickey and Robison, individually, jointly, and in conspiracy with one another, and under color of state law and within the scope of their employment, deprived Wayne of his constitutional rights.

95.     Defendants accused Wayne of criminal activity and exerted influence to initiate and continue judicial proceedings against him without any just probable cause and/or reasonable suspicion to do so.  This was done in violation of his rights secured by the 4th and 14th Amendments.

96.     Additionally, Defendant Robison's account of interrogation of Wayne changed at different times, and by all appearances it would seem that Defendant Robison offered false testimony at the general sessions hearing for this matter.

97.     By engaging the above referenced conduct and the conduct described within this Complaint these Defendant Officers have caused Wayne to be unreasonably seized and improperly subjected to judicial proceedings for which there was no probable cause nor reasonable suspicions.  These officers, with malice intent, engaged in illegal, coercive, manipulative, and physical threats to illicit a false confession.  They additionally assaulted Wayne using physical force to restrain him from leaving a voluntary interview, while denying him access to an attorney per his request.  These proceedings were initiated and continued on in a malicious manner resulting in devastating injury.

98.    As the result of the Defendants false allegations, fabricated evidence, and false/coerced confession (s) Wayne spent more than 24 years in prison for a crime he did not commit and stayed there through his sham trial and eventual exoneration/proclaiming of his innocence by the Giles County Circuit Court.

99.    As a result of this misconduct/malicious misconduct of the Defendant Officers, Wayne suffered great loss of liberty, menta anguish, humiliation, degradation, emotional suffering and pain, and other grievous and continuing injuries and damages.

## COUNT 3

### 42 U.S.C. § 1982 Claim for Violation of the Right Against Self-Incrimination in Violation of the 5th and 14th Amendments

#### *Against Defendants Dickey and Robison*

100.    Plaintiff hereby incorporates all of the allegations of this Complaint as if fully set forth herein, and further alleges as follows:

101.    Even though Wayne had nothing to do with the murder of Nakeavia Rivers, Defendants Dickey and Robison threatened, manipulated, lied, physically threatened, and applied actual force against Wayne in order to coerce a false and fabricated confession in violation of his 5th and 14th Amendment rights.

102.    In particular as described in greater detail elsewhere in the Complaint, Defendants applied the following illegal and highly coercive interrogation techniques, including but not limited to the following:  Threatened Wayne with physical violence, applied actual unlawful force to Wayne's body to stop him from leaving during the unlawful interrogation, denied him counsel, made false promises, and indicated that Wayne was simply undergoing the standard procedure for these officers and the PPD.

103.    These coercive interrogation techniques are shocking and have no place in modern society

and violate the decencies of civilized conduct. By doing this to Wayne and interrogating him in the manger they did, and doing nothing to stop the violation, Defendants set in motion a series of events and/or acts which they reasonable knew for should have known would cause the false confession to be used at trial, resulting in a catastrophic injury in violation of Wayne's rights and the constitution.

104.    As a direct and proximate result of the Defendants' actions and/or omissions Wayne was detained, charged with the murder of Nakeavia Rivers, prosecuted, falsely arrested, falsely imprisoned, wrongfully convicted, and spent 24 years in prison for a crime he did not commit.

## COUNT 4

### 42 U.S.C. § 1983 Civil Rights Conspiracy Claim

#### *Against Defendants Dickey and Robison*

105.    Plaintiff hereby incorporates all of the allegations of this Complaint as if fully set forth herein, and further alleges as follows:

106.    Defendants Dickey and Robison agreed among themselves to act in concert to deprive Wayne of his clearly established constitutional rights as protected by the 4th, 5th, and 14th Amendments, including but not limited to his right not to be deprived of liberty without due process of law and be free illegal seizure and imprisonment.

107.    These Defendants engaged in and facilitated the overt acts describe above and incorporated herein in the furtherance of said conspiracy against Wayne, including but not limited to coerce a false confession and/or the fabrication of evidence, and offering testimony at a formal judicial criminal hearing that would prove to be either false or inconsistent testimony.

108.    As a direct and proximate result of the Defendants' actions and/or omissions Wayne was detained, charged with the murder of Nakeavia Rivers, prosecuted, falsely arrested, falsely

imprisoned, wrongfully convicted, and spent 24 years in prison for a crime he did not commit.

## COUNT 5

### 42 U.S.C. § 1983

### Failure to Intervene

#### *Against Defendants Dickey and Robison*

109.    Plaintiff hereby incorporates all of the allegations of this Complaint as if fully set forth herein, and further alleges as follows:

110.    During the constitutional violations described within this Complaint, one or more of these Defendants stood by without intervening to prevent the violation (s) of Wayne's protected rights, even though they had ample opportunity to do so.  Defendant Robison went so far as to ratify part of that conduct, at one point stating that if Defendant Dickey had not laid hands on Wayne during the second interrogation, he himself would have done so.

111.    The misconduct described in this Count and above and within this Complaint was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard for the truth and of Wayne's innocence.

112.    As a direct and proximate result of the Defendants' actions and/or omissions Wayne was detained, charged with the murder of Nakeavia Rivers, prosecuted, falsely arrested, falsely imprisoned, wrongfully convicted, and spent 24 years in prison for a crime he did not commit.

## COUNT 6

### MALICOUS PROSECUTION

### State Law Claim

#### *Against Defendants Dickey and Robison*

113.    Plaintiff hereby incorporates all of the allegations of this Complaint as if fully set forth

herein, and further alleges as follows:

114. Suit/prosecution was filed and/or undertaken in this matter as a direct and proximate result of the unlawful conduct of the Defendants described within this Complaint.

115. Defendants brought the action with malice, and at least one of these Defendants intentionally provided false information to the criminal court against Wayne and in violation of his protected rights.

116. After 24 years in prison this action was finally terminated in Wayne's favor, and he has been proclaimed to be an innocent man.

117. Defendants' actions and/or omissions are the proximate cause and the cause in fact of Wayne's injuries and the deprivation of his freedom and decimation of his protected rights.

118. As a direct and proximate result of the Defendants' actions and/or omissions Wayne was detained, charged with the murder of Nakeavia Rivers, prosecuted, falsely arrested, falsely imprisoned, wrongfully convicted, and spent 24 years in prison for a crime he did not commit. Defendants' conduct was knowing, willful, wanton, unreasonable, malicious, oppressive, reckless, grossly reckless, and in flagrant disregard for Wayne's civil rights, privileges, welfare and well-being.

## COUNT 7

## INTENTONAL INLFICTION OF EMOTIONAL DISTRESS

### *Against Defendants Dickey and Robison*

119. Plaintiff hereby incorporates all of the allegations of this Complaint as if fully set forth herein, and further alleges as follows:

120. In the manner described above and within this Complaint Defendants Dickey and Robison engaged in extreme and outrageous conduct.

121.    The Defendants either intended, knew, or should have known that their conduct would cause severe emotional distress to Wayne.  That misconduct was undertaken with malice, willfulness, and reckless indifference to the rights of others.

122.    As a direct and proximate result of the Defendants' actions and/or omissions Wayne was detained, charged with the murder of Nakeavia Rivers, prosecuted, falsely arrested, falsely imprisoned, wrongfully convicted, and spent 24 years in prison for a crime he did not commit. Defendants' conduct was knowing, willful, wanton, unreasonable, malicious, oppressive, reckless, grossly reckless, and in flagrant disregard for Wayne's civil rights, privileges, welfare and well-being.

## COUNT 8

## FALSE IMPRISONMENT

### State Law Claim

### *Against Defendants Dickey and Robison*

123.    Plaintiff hereby incorporates all of the allegations of this Complaint as if fully set forth herein, and further alleges as follows:

124.    As laid out within this Complaint and incorporated herein, Defendants actions and/or omissions directly and/or indirectly resulted in the intentional and unlawful detention and imprisonment of an innocent man.

125.    The detention, restraint, and confinement of Wayne were unlawful and without just cause.

126.    The harm suffered by Wayne is enormous, and is injuries are severe.  He lost 24 years of his life behind bars as a result of the negligent, willful, wanton, reckless, grossly reckless, and/or intentional acts of the Defendants who at all times were acting under color of state law.

127.    Defendants' actions and/or omission are the proximate cause in fact and the proximate

cause of Wayne's devastating injuries and losses.

128.    As a direct and proximate result of the Defendants' actions and/or omissions Wayne was detained, charged with the murder of Nakeavia Rivers, prosecuted, falsely arrested, falsely imprisoned, wrongfully convicted, and spent 24 years in prison for a crime he did not commit. Defendants' conduct was knowing, willful, wanton, unreasonable, malicious, oppressive, reckless, grossly reckless, and in flagrant disregard for Wayne's civil rights, privileges, welfare and well-being.

## COUNT 9

### 42 U.S.C. § 1983 Claim Under Monell v. Dep't of Social Servs.

### (Against Defendant City of Pulaski)

129.    Plaintiff hereby incorporates all of the foregoing paragraphs and further alleges as follows:

130.    Before, during, and after the unlawful investigation, prosecution and incarceration of Mr. Burgess, Defendant City of Pulaski and the Chief of Police of the Pulaski Police Department, in his official capacity and as the final policymaker, with deliberate indifference, maintained a policy, custom, or pattern and practice of promoting, facilitating and condoning improper, illegal and unconstitutional investigative techniques by PPD investigators, and of failing to adequately train, supervise or discipline PPD investigators in connection with fundamental investigative tasks implicating the constitutional rights of suspects.

131.    The City of Concord and the Chief of Police also ratified and condoned the improper, illegal, and unconstitutional conduct of PPD investigators.

132.    It would have been plainly obvious to a reasonable policymaker that such policies, customs, or patterns and practices would lead to deprivations of suspects' constitutional rights.

133.    As the final policymaker for the City of Pulaski, the Chief of Police created, promulgated

and maintained, with deliberate indifference, the following policies, customs, or patterns which deprived Mr. Burgess of his constitutional rights, including but not limited to his rights not to be arrested or seized without probable cause, not to be deprived of his liberty without due process of law, to a fair criminal proceeding, and to meaningful access to the courts by:

    a. Failing to properly train, supervise and/or discipline PPD investigators with regard to their constitutional duties not to (i) fabricate evidence; (ii) engage in coercive and threatening interrogation techniques; (iii) conceal exculpatory evidence; (iv) coerce a false confession from an innocent person; (v) intentionally or recklessly fail to conduct an investigation to determine the true facts of a crime; and (vi) ignore evidence that points to the innocence of a person who is serving a sentence for a crime he did not commit;

    b. Encouraging, promoting and condoning PPD investigators to: (i) fabricate evidence; (ii) engage in coercive and threatening interrogation techniques; (iii) conceal exculpatory evidence; (iv) coerce a false confession from an innocent person; (v) intentionally or recklessly fail to conduct an investigation to determine the true facts of a crime; and (vi) ignore evidence that points to the innocence of a person who is serving a sentence for a crime he did not commit and fostering a climate of impunity for engaging in such unconstitutional conduct;

    c. In other respects to be proved through discovery and at trial.

134. The wrongful acts and omissions that caused Mr. Burgess' wrongful arrest, prosecution, conviction, and incarceration were carried out pursuant to the municipal defendant's policies, customs, patterns or practices.

135. The municipal policies, customs, or patterns and practices of the City of Pulaski proximately and directly caused Mr. Burgess' wrongful arrest, prosecution, conviction, and incarceration.

136. At no point in time did any authority within the PPD, including the now-Chief of Police John Dickey, take any action to ameliorate the harms caused by the policies, customs, or patterns and practices of the department. Likewise, no official with the City of Pulaski ever took any corrective action. To the contrary, the municipal defendant condoned and ratified the policies,

customs, or patterns and practices of the Pulaski Police Department.

137.     As a direct and foreseeable consequence of the deficient municipal policies, customs, or patterns and practices as described above, Mr. Burgess was wrongfully incarcerated for 24 years and suffered physical, emotional, and pecuniary damages as described in this Complaint and to be proved through discovery and at trial.

## COUNT 10

**42 U.S.C. § 1983 claim for Deprivation of Liberty Without Due Process of Law and Violation of Right to a Fair Trial, Under the Fourteenth Amendment, based on withholding exculpatory evidence from the prosecution and defense**

### *Against Defendants Dickey and Robison*

138.     Plaintiff hereby incorporates each of the allegations of this Complaint as if fully set forth herein, and further alleges as follows:

139.     Defendants Dickey and Robison withheld exculpatory evidence from the prosecution and defense, thereby violating the Constitution and *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny.

140.     Defendants Dickey and Robison, individually and in concert, in an effort to secure Mr. Burgess' conviction without regard to his actual innocence, deliberately and in bad faith deprived him of his Due Process rights.

141.     Defendants Dickey and Robison, individually and in concert, in an effort to secure Mr. Burgess' conviction without regard to his actual innocence, intentionally suppressed material, exculpatory and impeachment information from Mr. Burgess, his defense counsel, and the prosecution in violation of the Constitution and *Brady v. Maryland*, including without limitation failing to disclose the true circumstances of Nacia Rivers statements, medical evidence of previous injuries and abuse of the deceased child and failing to disclose information pointing to other

suspects..

142.    Evidence of Defendants' misconduct could have been used to undermine key evidence relied on by Defendants in this investigation. Had it been disclosed, it could have been used at trial to impeach Defendants and witnesses as well as the quality of the entire investigation.

143.    Defendants' actions, individually and cumulatively, played a direct and decisive role in the jury's guilty verdict and were highly prejudicial to Mr. Burgess' defense. Had Defendants not engaged in such misconduct or had their misconduct been disclosed, the evidence would have tended to prove Mr. Burgess' innocence, cast doubt on the entire police investigation and prosecution, and most likely would have created a different result at trial.

144.    The foregoing acts and omissions were deliberate, reckless, wanton, cruel, motivated by evil motive or intent, done in bad faith, and/or involved callous indifference to Mr. Burgess' federally protected rights. These acts were perpetrated while Defendants were acting under color of state law and in their capacities as employees or agents of the City of Pulaski.

145.    As a direct and proximate result of Defendants' actions, Mr. Burgess was wrongly arrested, detained, charged with murder, prosecuted, convicted, sentenced to life in prison, incarcerated for twenty-four years, and suffered the other grievous injuries and damages set forth above.

## COUNT 11

### 42 U.S.C. § 1983 claim for Deprivation of Liberty Without Due Process of Law and Violation of Right to a Fair Trial, Under the Fourteenth Amendment, based grossly negligent hiring of Dr. Charles Harlan

### *Against Defendant Giles County*

146.    Plaintiff hereby incorporates each of the allegations of this Complaint as if fully set forth herein, and further alleges as follows:

147.    Municipal Defendant Giles County did engage the services of the thoroughly disgraced

medical examiner, Dr. Charles Harlan, despite the highly publicized, copious instances of his misconduct.

148.    Defendant Giles County, as a municipality, with the cooperation by accession of the Office of the District Attorney and Defendants Dickey and Robison, and pursuant to its statutory responsibilities under T.C.A. § 38-7-104 et seq, engaged the services of an utterly incompetent and malicious medical examiner to handle the county's ME needs.

149.    Utilizing Dr. Harlan as the county Medical Examiner was an act that was deliberate, reckless, wanton, cruel, motivated by evil motive or intent, done in bad faith, and/or involved callous indifference to Mr. Burgess' federally protected rights.

150.    As a direct and proximate result of Defendant's actions, Mr. Burgess was wrongly arrested, detained, charged with murder, prosecuted, convicted, sentenced to life in prison, incarcerated for twenty-four years, and suffered the other grievous injuries and damages set forth above.

## JURY DEMAND

151.    Pursuant to the Seventh Amendment of the United States Constitution, Mr. Burgess requests a jury trial before 12 of his peers on all issues and claims set forth in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Burgess demands judgment jointly and severally against Defendants as follows:

      A.  That the Court award compensatory damages to him and against the Defendants, jointly and severally, in an amount to be determined at trial but that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction over this action;

B.  That the Court award punitive damages to him, and against all individual Defendants, in an amount to be determined at trial, that will deter such conduct by Defendants in the future;

C.  For a trial by jury;

D.  For pre-judgment and post-judgment interest and recovery of his costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 for all 42 U.S.C. § 1983 claims; and

E.  For any and all other relief to which he may be entitled.

Respectfully Submitted,

**/s/ John H. Morris**
John H. Morris, BPR #35789
Nashville Vanguard Law, PLLC
110 Cude Ln.
Madison, TN 37115
Phone:          (615) 229-5529
Email:           john@tek.law

**/s/ Andrew S. Lockert**
Andrew S. Lockert, BPR #036606
Lockert Law PLLC
112 Frey Street, Suite B
Ashland City, TN 37015
Phone:          (615) 669-3053
Email:           andrew@lockertlaw.com

**/s/ Sunny Stevens**
Sunny Stevens, BPR #036218
108 N Main St.
Ashland City, TN 37015
Email:           sunnystevensattorney@gmail.com